Accordingly, Dr. Baer's testimony was struck and the jury was instructed to disregard it.

HERITAGE BANK, N.A., N/K/A, MIDLANTIC NATIONAL BANK/SOUTH, PLAINTIFF, v. VILSMEIER AUCTION CO., DEFENDANT.

Superior Court of New Jersey
Law Division Camden County

Decided December 18, 1986.

*Bari J. Gambacorta* for plaintiff.

*Frank DiDomenico* for defendant.

## OPINION

HYLAND, J.S.C.

This summary judgment motion raises an issue of first impression in New Jersey as to whether or not an auctioneer who, in good faith, sells personal property in which a third party has a perfected security interest without authorization from the secured party, renders himself liable to the secured party for conversion, even though the auctioneer had no actual knowledge of the secured party's interest.

On September 21, 1983 the defendant Vilsmeier Auction Co. conducted an auction in Moorestown, N.J., and sold two (2) Great Dane Refrigerator Trailers to the highest bidder, Evans Delivery Co., for a total of $9,000. It auctioned the vehicles at the behest of J.K. Enterprises, Inc. (J.K.) and received a commission for its services.

Prior to the auction, Joseph Koenig, president of J.K., had provided to the auctioneer certificates of unencumbered title from the New Jersey Division of Motor Vehicles (DMV) for each trailer. However, at the time of the auction the two trailers were actually subject to a perfected security agreement in favor of plaintiff Heritage Bank.

The bank had previously loaned $20,000 on October 1, 1981 after Koenig had presented a duplicate set of clear title certifi-

cates to it as collateral for the loan. The bank sent the titles, with appropriate notice of its lien, to the DMV pursuant to *N.J.S.A.* 39:10–9. J.K. subsequently defaulted on the loan and the bank has instituted this action against the auctioneer to recoup its loss on the loan.

In support of its motion, the plaintiff relies upon a line of authority from a majority of other jurisdictions, including the Federal courts, which hold an auctioneer liable for conversion when property is sold subject to a perfected security interest. 96 *A.L.R.*2d 208, 210 (1964); 7 *Am.Jur.*2d, *Auctions and Auctioneers* § 69 (1980).

Liability for conversion is imposed regardless of the fact that the auctioneer acted in good faith and without actual or constructive knowledge of the security interest. *Commercial Credit Corp. v. Joplin Automobile Auction Co.*, 430 *S.W.*2d 440, 444 (Mo.App.1968). Even where actual or constructive knowledge is required to establish conversion, it has been held that the existence of a perfected security interest is constructive knowledge. *Top Line Equipment Co. v. National Auction Service*, 32 *Wash.App.* 685, 649 *P.*2d, 165, 167 (1982).

In response, the defendant has cited only two cases, both of which predate the Uniform Commercial Code, requiring constructive notice on the part of the auctioneer before liability for conversion may be found. In addition, a California appellate court failed to find liability against an auctioneer in the case of *Jessup v. Cattle Center, Inc.*, 259 *Cal.App.*2d 434, 438, 66 *Cal.Rptr.* 361 (App.1968). However, even these cases acknowledge that where an auctioneer has constructive notice, as in a case where the property is subject to a valid perfected security interest, it is liable for conversion.

In discussing the doctrine of conversion in New Jersey, the court in *McGlynn v. Schultz* stated:

The general rule is that one who exercises unauthorized acts of dominion over the property of another, in exclusion or denial of his rights or inconsistent therewith, is guilty of conversion although he acted in good faith and in ignorance of the rights or title of the owner. The state of his knowledge with

respect to the rights of such owner is of no importance, and cannot in any respect affect the case.

[90 *N.J.Super.* 505, 526 (Ch.Div.1966) aff'd, 95 *N.J.Super.* 412 (App.Div.1967).]

The defendant argues that the bank and auctioneer are both "innocent" parties who were duped by Mr. Koenig and the loss should fall on the bank since it is better able to absorb the financial loss. However, the auctioneer could have known of the bank's interest if it had applied for a title search from the DMV and paid a relatively modest fee. The defendant suggests that this would be a time-consuming procedure and not consistent with existing business practices. However, there is absolutely nothing that the bank could have done to anticipate Mr. Koenig's subsequent fraud. On the other hand, the auctioneer did have the opportunity to discover the fraud if a search had, in fact, been made.

Finally, this area of the law involves the policy considerations embodied in the Uniform Commercial Code. Specifically, the drafters of the Code intended to create a dependable system of secured transactions that could be protected when there was compliance with the Code's filing requirements. Defendant admits that the bank perfected its security interest in accordance with *N.J.S.A.* 39:10–9, *N.J.S.A.* 39:10–11, and *N.J.S.A.* 12A:9–302(1)(d). Under *N.J.S.A.* 12A:9–201(1) a validly filed security interest is effective as between the parties and others, with certain exceptions that are not relevant here.

Accordingly, plaintiff's motion for summary judgment is hereby granted.